**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
MICHAEL E. ADLER SBN 236115
meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON SBN: 207873
harmeet@dhillonlaw.com
NITOJ P. SINGH SBN: 265005
nsingn@dhillionlaw.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BRUNNER ACCOUNTING GROUP, a California sole proprietorship; individually and on behalf of a class of similarly situated businesses and individuals,

Plaintiffs,

vs.

SVB FINANCIAL GROUP; SILICON VALLEY BANK; BLUEVINE CAPITAL INC.; JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.; BANK OF AMERICA CO., BANK OF AMERICA N.A.; ROYAL BANK OF CANADA, CITY NATIONAL BANK; SQUARE, INC.; and; DOE LENDERS 1 to 4,975, inclusive,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

**(1) DECLARATORY RELIEF**

**(2) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq.***

**(3) UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Brunner Accounting Group, brings this class action complaint on behalf of themselves and those similarly situated (hereinafter "Plaintiff") against Defendants SVB

Financial Group; Silicon Valley Bank.; BlueVine Capital Inc.; JPMorgan Chase & CO., JPMorgan Chase Bank, N.A.; Bank of America CO., Bank of America N.A.; Royal Bank of Canada, City National Bank; Square, Inc.; and DOE LENDERS 1 to 4,975, inclusive, (hereinafter "Defendants") to stop Defendants' unlawful conduct and to obtain monies owed as a result of Defendants' conduct. For their class action complaint, Plaintiff alleges as follows based upon their knowledge and upon information and belief, including investigations conducted by their attorneys.

## PARTIES

1. Plaintiff, Brunner Accounting Group ("Brunner") is a sole proprietorship, organized and authorized to do business, and doing business, in the State of California since January 2019. Ilona Brunner is the 100% owner of Brunner and is a licensed CPA in good standing since 2009. Brunner was formed to provide exceptional tax and accounting services to its clients and is based in Glendale, California.

2. Upon information and belief, at all relevant times, Defendant SVB Financial Group ("SVB Financial") is a Delaware corporation and the parent company of Silicon Valley Bank. SVB Financial is a bank and financial holding company and headquartered in Santa Clara, California. Through its subsidiaries, SVB Financial conducts substantial business within this District.

3. Upon information and belief, at all relevant times, Defendant Silicon Valley Bank ("SVB") is a subsidiary of SVB Financial. SVB is a U.S. based high-tech commercial bank. SVB is headquartered in Santa Clara, California and conducts substantial business within this District.

4. Upon information and belief, Defendant BlueVine Capital Inc. ("BlueVine) is a Delaware corporation that operates a fintech startup. BlueVine provides financing for small businesses such as lines of credit, term loans, and invoice factoring services. Upon information and belief, BlueVine is headquartered in Redwood City, California and conducts substantial business within this District.

5. Upon information and belief, at all relevant times, Defendant JPMorgan

Chase & CO., ("Chase & Co.") is a Delaware corporation and the parent of all Chase entities. Chase & CO. is a diversified financial services company providing banking, insurance, investments, mortgage banking, and consumer finance to individuals, businesses and institutions in all 50 states and internationally. Chase & CO. is headquartered in New York, New York. Through its subsidiaries, Chase & CO. conducts substantial business within this District.

6. Upon information and belief, at all relevant times, Defendant JPMorgan Chase Bank N.A., ("Chase") is the main baking of Chase & CO. and is headquartered in Columbus, Ohio. Chase conducts substantial business within this District.

7. Upon information and belief, at all relevant times, Defendant Bank of America, CO., ("BofA Co.) is a Delaware corporation and the parent company of Bank of America N.A. BofA Co., is an American multinational investment bank and financial services company and headquartered in Charlotte, North Carolina. Through its subsidiaries, BofA Co. conducts substantial business within this District.

8. Upon information and belief, at all relevant times, Defendant Bank of America, N.A., ("BofA") is a federally chartered bank and a subsidiary of BofA Co., BofA is headquartered in Charlotte, North Carolina and conducts substantial business within this District.

9. Upon information and belief, at all relevant times, Defendant, Royal Bank of Canada ("ROC") is a Canadian corporation and multinational financial services company. ROC is headquartered in Toronto, Canada. Through its subsidiaries, ROC conducts substantial business within this District.

10. Upon information and belief, at all relevant times, Defendant City National Bank ("CNB") is the subsidiary of ROC. CNB offers a full complement of banking, trust and investment services through 72 offices, including 19 full-service regional centers, in Southern California, the San Francisco Bay Area, Nevada, New York City, Nashville, Atlanta, Minneapolis, Washington, D.C. and Miami. CNB is headquartered in Los Angeles, California and conducts substantial business within this

District.

11. Upon information and belief, at all relevant times, Defendant Square, Inc. ("Square") is a Delaware corporation. Square is financial services, merchant services, aggregator, and mobile payment company. Square is headquartered in San Francisco, California, and conducts substantial business within this District.

12. In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

13. Plaintiff is unaware of the names, identities, or capacities of the Defendants sued as Doe Lenders 1 to 4,975, but are informed and believe and thereon allege that such fictitiously-named defendants are responsible in some manner for the damages and unfair business practices and violation of rights as described in this Complaint. Plaintiff will amend this Complaint to state the true names, identities, or capacities of such fictitiously-named Defendants when ascertained.

**JURISDICTION AND VENUE**

14. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

15. This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in California.

16. The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

## FACTUAL ALLEGATIONS

**Background**

17. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-19.

18. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

19. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

20. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

21. The Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

22. On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California to prevent the spread of COVID-19.

23. On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and

Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

24. As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the "Paycheck Protection Program" ("PPP"). The PPP provides small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The SBA backs the loans. The loans are administered by Treasury, backed by the Federal Government, but funded by private lenders ("Lenders"), including banks and financial services firms.

25. Without the work performed by Plaintiff and Class Members, the CARES Act violates the United States Senate's legislative intent. The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[1] [Emphasis added].

26. The Treasury announced on April 3, 2020, that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-

[1] *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281*

employed individuals could apply as well.[2]

27. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

28. The Treasury's PPP Information Sheet Lenders (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), provides that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement. Specifically, the SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;
- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and
- One percent (1%) for loans of at least $2,000,000.[3]

29. The SBA Regulations include not only compensation for Lenders, but also agents. Under the PPP ISL, "[a]n 'Agent' is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or

[2] *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

[3] *https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf*

- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

30. Additionally, the SBA Regulations provide that "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. **Agents may not collect any fees from the applicant**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP"[5] loan is as follows (the "Agent Fees"):

- One percent (1%) for loans of not more than $350,000;
- 0.50% for loans of more than $350,000 and less than $2 million; and
- 0.25% for loans of at least $2 million.

31. The SBA Regulations establish limits on Agent Fees. The SBA Regulations and Treasury Guidance determined that the Agent Fees set forth above are reasonable given the application requirements and the fees that Lenders receive for making PPP loans.

32. Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiff served as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and backed by the full faith and credit of the Federal Government.

33. Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses. However, Defendants failed to pay the required compensation to Plaintiff (the "Agents"), that facilitated the loan process between Lenders and applicants as required by the SBA Regulations.

34. Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of the monies owed to Plaintiff.

35. As calculated in Attachment A, hereto, Plaintiff, on behalf of themselves and the proposed Class (as defined below), seek $3,848,597,082.00, to be set aside pro-rata by the Defendants for distribution to a designee of the borrowers of the respective PPP

---

[4] *Id.*

[5] *Id. (Emphasis added)*

loans.

**<u>Plaintiff Assisted their Clients With Applying for PPP Loans Under the CARES ACT</u>**

36. On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would significantly impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

37. Plaintiff spent between 50-100 hours familiarizing itself with the Act, and the related SBA Regulations, and in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP and (b) Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

38. In or about April 2020, Plaintiff assisted their clients in the gathering and analysis of their documents, as well as the calculation and preparation of loan applications.

39. Based on the SBA Regulations, Plaintiff understood that <u>they were not allowed to charge their clients a fee</u> relating to the application process. The Agents were <u>only</u> permitted to receive compensation from the Agents' share of the $20 billion in fees the Federal Government paid the Lenders for originating the PPP loans.

40. Plaintiff spent between two (2) and ten (10) hours on each application, depending on the complexity of the client and the amount of available data.

41. To fill out the Applications, Plaintiff assisted clients in gathering the required information and filling out the applications, including the following documents, where applicable or necessary:

a. Loan Calculator Spreadsheet;
b. SBA Form 2483 – Each Owner 20% or more or Officer;
c. Addendum A: Affiliates – Each Owner 20% or more must complete;

d. Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

e. Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;

f. Driver's License for each 20% or more owner;

g. Articles of Incorporation or Articles of Organization;

h. 2019 IRS/State Payroll Forms: 940 or all four quarterly 941;

i. 2019 Payroll Summary Report by Employee;

j. 2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;

k. 2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;

l. 2020 1st QTR 941 Form;

m. January 2020 Payroll Summary by Employee;

n. February 2020 Payroll Summary by Employee;

o. March 2020 Payroll Summary by Employee;

p. Health Insurance Premium Paid – January, February, and March 2020;

q. Retirement Matching Plan Paid – January, February, and March 2020;

r. Wiring Instruction; and

s. Copy of most recent bank statement (collectively, (a) – (s) above are part of the "Application").

42. In most instances, the Application had to be amended or redone at least once as the SBA, or the Lenders changed the forms and added new documentation and addendum requirements. Agents spent additional hours making the required changes, and in some cases, resubmitted the entire Application because the Lenders required Plaintiff to do so.

43. Plaintiff believed in good faith that they would receive the Agent Fees from the Lenders upon funding of each of their clients' loans under the PPP, as required by the SBA Regulations.

44. Upon information and belief, Defendants did not comply with the SBA Regulations in distributing PPP funds. Instead, Defendants either retained all of the Agent Fees or informed Agents that they would be paid only a small percentage of the mandated Agent Fees.

45. As a result of Defendants' unlawful actions, Plaintiff suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in connection with assisting their clients in applying for and obtaining PPP loans.

**Class Action Certification**

46. As noted above, Plaintiff brings this action on behalf of themselves and all others similarly situated as a state and nationwide Class, defined below.

47. Plaintiff seeks to represent a Class composed of and defined as follows:

a. All Agents as that term is defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, i.e., met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

b. An "Agent" as defined by the SBA Regulations is as follows:

   i. an attorney,
   ii. an accountant,
   iii. a consultant,
   iv. someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,
   v. someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans,
   vi. a loan broker, or
   vii. any other individual or entity representing an applicant by conducting business with the SBA.

48. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

49. *Numerosity:* The Class is composed of thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

50. *Commonality:* There is a commonality in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

b. Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

c. Did Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class?

d. Did Defendants prioritize their origination own fees over abiding by the CARES Act and PPP specifications?

e. Did Defendants' conduct constitute an "unfair business practice" under California Business & Professions Code § 17200, *et seq.*?

f. Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents were not receiving compensation when assisting applicants with PPP loan process?

g. Did Defendants actively conceal a material fact or facts from the Plaintiff, i.e., that the Agents were not going to receive their earned fees from assisting with the Applications?

h. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

i. Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

j. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agent their earned fees under the CARES Act; and

k. Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit.

51. *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

52. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

53. *Adequacy*: Plaintiff is an adequate representative of the Class because they are members of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and their counsel will vigorously prosecute this action on behalf of

the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

54. *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the borrower) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**On Behalf of the Class**

**Against All Defendants**

**(DECLARATORY RELIEF)**

55. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

56. Plaintiff asserts this cause of action on behalf of themselves and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA ("PPP Agents").

57. Plaintiff assisted their clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

58. An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff, or claim that only a percentage of the Agent Fees are owed.

59. Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of this 19.14% are shown in Attachment "A" hereto.

**SECOND CAUSE OF ACTION**

**On Behalf of the Class**

**Against All Defendants**

**(Violation of the "Unfair" Prong of the UCL, California Business & Professions Code § 17200, *et seq*.)**

60. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

61. Plaintiff asserts this cause of action on behalf of themselves and the other Class Members as Agents, as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

62. The California Unfair Competition Law (hereinafter "UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.

63. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

64. Defendants have violated the "unfair" prong of the UCL by undermining the Application process and the Agent Fees payment requirements.

65. Defendants engaged in lending to businesses under the PPPEA and thus were required to abide by obligations set forth in the SBA Regulations.

66. Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the understanding, which is consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their professional services in assisting in compiling the Applications, they would be compensated through the mandated Agent Fees from the Lenders.

67. Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

68. Defendants knew or should have known, that many of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without the assistance of Plaintiff and the Class Members.

69. Defendants also knew or should have known, that their customers would seek the assistance, and in fact, did seek the assistance of PPP Agents like Plaintiff and the Class Members to assist them in applying for PPP loans with Defendants.

70. Based on the assistance from the PPP Agents like Plaintiff and the Class Members, the loan customers successfully applied for PPP Loans with their lenders, which were guaranteed by the SBA.

71. As a result of these PPP loans, the SBA has paid the Defendants the processing fees that are owed to PPP lenders. These processing fees include the fees that are due and owing to PPP Agents, including Plaintiff and the Class Members, for their services.

72. The Defendants obtained the services of and benefits provided by the Plaintiff to the Defendants' customers. As a result, Defendants have earned substantial PPP loan processing fees, but have refused to compensate the Plaintiff and Class the PPP Agent

Fees as mandated by the SBA Regulations. Therefore, Defendants' refusal is an unfair and deceptive consumer act or practice.

73. Through their unfair acts and practices, Defendants have improperly obtained fees from the Federal government at the expense of Plaintiff and the Class.

74. Defendants' unfair practices occurred during the Application process when Plaintiff rendered services to its clients in anticipation of being paid the mandated Agent Fees by the Lenders, only to be denied all or a portion of the Agent Fees owed under the SBA Regulations.

75. Defendants' unfair practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

76. These acts and practices were unfair because Defendants withheld monies owed to Plaintiff that were provided for pursuant to the SBA Regulations.

77. By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of California Business & Professions Code §17200, *et seq*.

78. Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest in light of the purpose and nature of the PPP Loans and because the CARES Act expressly authorized the PPP loans for the benefit of the public, including Plaintiff.

79. Plaintiff and the Class Members are entitled to equitable relief.

80. As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the UCL as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper.

81. Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

**On Behalf of the Class**

**Against All Defendants**

**(UNJUST ENRICHMENT)**

82. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

83. Plaintiff asserts this cause of action on behalf of themselves and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

84. Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and the Class.

85. Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members.

86. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff.

87. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the

following relief:

1. For an Order certifying the Class as defined above, appointing Plaintiffs' as Class representatives for the Class, and appointing Plaintiffs' counsel as Class counsel for the Class;
2. For an Order declaring Defendants' actions to be unlawful;
3. For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan;
4. For equitable relief to Plaintiffs and Class Members;
5. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members, and equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;
6. For an award of punitive damages pursuant to applicable law;
7. For reasonable attorneys' fees and expenses as permitted by applicable statutes and law, including, but not limited to, Code of Civil Procedure section 1021.5;
8. For costs related to bringing this action;
9. For pre and post-judgment interest as allowed by law; and
10. Such further relief at law or in equity that this Court deems just and proper.

DATED: May 8, 2020

**GRAYLAW GROUP, INC.**

*/s/ Michael E. Adler*
Michael E. Adler

**DHILLON LAW GROUP INC.**

*/s/ Harmeet K. Dhillon*
Harmeet K. Dhillon
Nitoj P. Singh

*Attorneys for Plaintiff and the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of its claims by a jury to the extent authorized by law.

DATED: May 8, 2020

**GRAYLAW GROUP, INC.**

*/s/ Michael E. Adler*
Michael E. Adler

**DHILLON LAW GROUP INC.**

*/s/ Harmeet K. Dhillon*
Harmeet K. Dhillon
Nitoj P. Singh

*Attorneys for Plaintiff and the Proposed Class*