1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GERAGOS & GERAGOS, PC.**
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone: (213)625-3900
Facsimile: (213)232-3255
MARK J. GERAGOS          SBN 108325
mark@geragos.com
BEN J. MEISELAS          SBN 277412
ben@geragos.com
MATTHEW M. HOESLY      SBN 289593
mhoesly@geragos.com

**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
MICHAEL E. ADLER          SBN 236115
meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON      SBN: 207873
harmeet@dhillonlaw.com
NITOJ P. SINGH          SBN: 265005
nsingh@dhillonlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BRUNNER ACCOUNTING GROUP, a
California sole proprietorship;
individually and on behalf of a class of
similarly situated businesses and individuals,

Plaintiffs,

vs.

SILICON VALLEY BANK; JPMORGAN
CHASE BANK, N.A.; BANK OF
AMERICA, N.A.; CITY NATIONAL
BANK; and CROSS RIVER BANK,

Defendants.

Case No.: 2:20-cv-04235-GW-E

**FIRST AMENDED CLASS
ACTION COMPLAINT FOR
DECLARATORY RELIEF AND
DAMAGES**

**(1) DECLARATORY RELIEF**
**(2) UNJUST ENRICHMENT**
**(3) CONVERSION**
**(4) BREACH OF AN
    IMPLIED CONTRACT**
**(5) UNFAIR BUSINESS
    PRACTICES IN**

**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

**(6) VIOLATIONS OF THE CARES ACT**
**(7) VIOLATIONS OF THE SBA's 7(a) LOAN PROGRAM, 15 U.S.C. § 636(a)**
**(8) QUANTUM MERUIT**
**(9) BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES**

**DEMAND FOR JURY TRIAL**

Plaintiff Brunner Accounting Group ("Plaintiff") brings this class action complaint on behalf of itself and those similarly situated against defendants Silicon Valley Bank; JPMorgan Chase Bank, N.A.; Bank of America, N.A.; City National Bank; and Cross River Bank (hereinafter "Defendants"), to obtain fees owed to Plaintiff as a result of its work as the borrowers' agent whereby Plaintiff assisted small business borrowers (the "Applicants") in obtaining federally guaranteed loans through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans to combat the economic impact of COVID-19. When the PPP ended on August 8, 2020, the Treasury Department reported that 5,218,128 small businesses received loans totaling $525 billion from 5,460 lenders ("Lenders") across the county.[1] Based on Treasury Department reports, it is estimated that the Federal Government paid Lenders $18.29

---

[1] *Paycheck Protection Program (PPP) Report*, US Small Business Administration Approvals through 08/08/2020 (last visited, September 11, 2020), https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf

billion in lender fees.[2] Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as the Applicants' agents as it was the agents that facilitated loans between Defendants and Applicants. Despite precise regulatory requirements stating that agent fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the Class Members the statutorily required agent fees. Instead, Defendants have kept the agent fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## I.  PARTIES

1.      Plaintiff, Brunner Accounting Group ("Brunner"), is a sole proprietorship, organized and authorized to do business, and doing business, in the State of California since January 2019. Ilona Brunner is the 100% owner of Brunner and is a licensed CPA in good standing since 2009. Brunner is based in Glendale, California, which is also where its owner lives. Although Plaintiff assisted its clients with preparing their application(s) for a PPP loan from the Defendants, Defendants have failed to pay Plaintiff the agent fees Defendants owe Plaintiff for Plaintiff's work in securing the PPP loans.

2.      Upon information and belief, at all relevant times, Defendant Silicon Valley Bank ("SVB") is a U.S. based high-tech commercial bank headquartered in Santa Clara, California. SVB conducts substantial business within this District.  Based on publicly available data, SVB funded an estimated $1.9 billion in PPP loans, generating an estimated $51 million in lender fees which were paid to SVB by the Federal Government.

3.      Upon information and belief, at all relevant times, Defendant JPMorgan Chase Bank, N.A. ("Chase"), is a Columbus, Ohio-based company providing banking, insurance, investments, mortgage banking, and consumer finance to individuals, businesses and institutions in all 50 states and internationally. Chase conducts substantial business within this District.  Based on publicly available data, Chase funded $29.3 billion

---

[2]  *SBA Paycheck Protection Program Loan Level Data*, US Department of Treasury (last visited, September 11, 2020), https://home.treasury.gov/policy-issues/cares-act/assistance-for-small-businesses/sba-paycheck-protection-program-loan-level-data

in PPP loans, generating an estimated $1.1 billion in lender fees which were paid to Chase by the Federal Government.

4.      Upon information and belief, at all relevant times, Defendant Bank of America N.A. ("BofA"), is a federally chartered bank headquartered in Charlotte, North Carolina. BofA conducts substantial business within this District.  Based on publicly available data, BofA funded $25.6 billion in PPP loans, generating an estimated $981 million in lender fees which were paid to BofA by the Federal Government.

5.      Upon information and belief, at all relevant times, Defendant City National Bank ("City National") offers a full complement of banking, trust and investment services through 72 offices, including 19 full-service regional centers, in Southern California, the San Francisco Bay Area, Nevada, New York City, Nashville, Atlanta, Minneapolis, Washington, D.C. and Miami. City National is headquartered in Los Angeles, California and conducts substantial business within this District. Based on publicly available data, City National funded an estimated $4.4 billion in PPP loans, generating an estimated $122 million in lender fees which were paid to City National by the Federal Government.

6.      Upon information and belief, Defendant Cross River Bank ("Cross River") is a full service bank headquartered in Teaneck, New Jersey. Cross River conducts substantial business in this District. Based on publicly available data, Cross River funded an estimated $6.5 billion in PPP loans, generating an estimated $177 million in lender fees which were paid to Cross River by the Federal Government.

## II. JURISDICTION AND VENUE

7.      The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

8.      This Court also has original jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States, including the

Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

9.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

10.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

### III.     FACTUAL ALLEGATIONS

#### *BACKGROUND*

11.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus disease, known as COVID-19.

12.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

13.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

14.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

15.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

16.     On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California to prevent the spread of COVID-19.

17.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

18.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program").

19.     The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight-weeks[3] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by Lenders including banks and financial services firms, that review and approve PPP loan applications.

20.     The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[4]

---

[3] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.

[4] *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

21.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

22.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff the Agent Fees Plaintiff is owed**.

23.     The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[5] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders – who approve and fund loan applicants – and the **addition** of independent agents ("PPP Agents") – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

24.     Under the SBA Regulations, the **Applicants have the right** to select a PPP Agent to assist the Applicants in applying for a PPP loan. The Applicants' PPP Agent "can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- …

- A loan broker; or,

---

[5] *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

- Any other individual or entity representing an applicant by conducting business with the SBA."[6]

25.     Under the SBA Regulations, the Lenders have the right to select an agent to assist the Lenders in processing PPP loans. The Lenders agent "can be:

  - …
  - Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
  - …"

26.     Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.**

27.     Before the passage of the CARES Act, **lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

  - Five percent (5%) for loans of not more than $350,000;
  - Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and
  - One percent (1%) for loans of at least $2,000,000.[7]

Based on Treasury Department reports, it is estimated that the Federal Government paid Lenders $18.29 billion in Lender Fees.[8]

28.     The CARES Act states, "**Agent fees will be paid by the lender out of the**

---

[6] *Id.*

[7] *85 FR 20816 (3)(d).*

[8] *SBA Paycheck Protection Program Loan Level Data*, US Department of Treasury (last visited, September 11, 2020), https://home.treasury.gov/policy-issues/cares-act/assistance-for-small-businesses/sba-paycheck-protection-program-loan-level-data

**fees the lender receives from SBA**. Agents may not collect fees from the **borrower or be paid out of the PPP loan proceeds**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million."[9] (the "Agent Fees").

29.    Before the passage of the CARES Act, lenders and agents were **not** compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[10]

30.    In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and PPP Agents work together to quickly and efficiently process Applications. To incentivize this relationship, the Lender and Agent were to split the federal government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

31.    By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "**issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans *prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2***

---

[9]  *85 FR 20816 (4)(c).*
[10] *Id. (Emphasis Added).*

*years*."[11]

32.     If not for the PPP Agents, millions of small businesses would have had difficulty or been unable to apply for PPP loans.

33.     **Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required for an Applicant to use an Applicants' Agent.**

34.     Here, the Defendants are SBA approved Lenders. Plaintiff served as the Applicants' PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government. Defendant assumes no risk in case the Applicant defaults on the PPP loan.

35.     Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the regulatorily required Agent Fees, but have instead retained the Agent Fee portion of the Lender Fees for itself.

36.     Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (i.e., Plaintiff's clients). The SBA Regulations require Plaintiff to be paid *only* by the Lender (i.e., Defendants) through the payment of a portion of the Lender Fees.

37.     Upon information and belief, apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendant.

38.     Adding validity to the need to file this action, on May 27, 2020, United Community Banks, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written

---

[11]  *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281. (Emphasis Added.)*

interrogatories relating to the PPP loans approved by the Bank, the **Bank's non-payment of fees to agents of borrowers** and the Bank's policies related to payment or non-payment of agent fees."[12]

### *Plaintiff Assisted its Clients with Applying*
### *for PPP Loans Under the CARES Act*

39.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing itself with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

40.     Complying with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process as the Applicants' Agent. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with a Defendant.

41.     Plaintiff acted in the statutorily defined role of the Applicants' Agent in securing PPP loans that were funded in the following approximate total amounts from each of the respective Defendants:

| DEFENDANT | # OF FUNDED LOANS | APPROXIMATE TOTAL LOAN AMOUNT |
|---|---|---|
| SVB | 1 | $20,000 |
| Chase | 1 | $350,000 |
| BofA | 1 | $3,200 |
| City National | 1 | $50,000 |

---

[12] *United Community Banks, Inc., Form 8-K* (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.

| Cross River | 1 | $20,000 |
|---|---|---|

42.     Although each of the Applicants' PPP loans were funded by the Defendants, based on information and belief, Defendants have each taken custody of the Agent Fee money they owe to Plaintiff from the Federal Government, yet each has failed to pay Plaintiff the statutorily required Agent Fee that Plaintiff is owed.

43.     Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients any fee relating to the Application process and that it was only permitted to receive compensation from the PPP Agents' share of the Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents benefit.

44.     Plaintiff further understood that it was not entitled to the Agent Fees until the Lender received its Lender Fees. Based on information and belief, Defendants have received the Lender Fees for the Applicants Plaintiff assisted, thereby making the Agent Fees immediately due to Plaintiff.

45.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[13].

46.     Therefore, Plaintiff believed in good faith that Defendants would comply with the SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

47.     However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiff. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

48.     But for the Plaintiff's preparation assistance allowing Applicants to apply for their PPP loans with the Defendants, the Defendant would not have earned their Lender Fees.

49.     Each of the defendants have stated in writing that it is not paying Agent Fees, either publicly, or in response to an email inquiry, or have not responded to numerous

---

[13] *85 FR 20812 (1). (Emphasis Added).*

1  requests for payment.

2      50.    Defendants, as Lenders under the PPP, lack any legal authority under the

3  SBA Regulations to withhold payment of the Agent Fees owed to Plaintiff for acting as the

4  Applicants' Agent.

5      51.    As a result of Defendants' unlawful actions, Plaintiff and the Class have

6  suffered financial harm by being deprived of the statutorily mandated compensation for the

7  professional services they provided in their critical role as an Applicants' PPP Agent,

8  assisting Applicants in the preparation of their PPP application. Defendants barred Plaintiff

9  from receiving compensation for their role as an Applicants' PPP Agents in the PPP

10 process, which role resulted in significant benefits to both small businesses and the

11 Lenders.

12                    **IV. CLASS ALLEGATIONS**

13     52.    Plaintiff brings this action on behalf of itself, and all other similarly situated

14 Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

15 Procedure and seeks certification of the following Nationwide Class:

16

17              All Agents who assisted a business in preparing an Application for a PPP

18              loan pursuant to the CARES Act (the "Nationwide Class").

19

20     53.    To the extent that a Nationwide Class is not certified, in the alternative,

21 Plaintiff brings this action on behalf of itself, and all other similarly situated Class members

22 pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks

23 certification of the following Statewide Class:

24

25              All Agents who assisted a business in California in preparing an Application

26              for a PPP loan pursuant to the CARES Act (the "Statewide Class").

27

28 The Statewide and Nationwide Class may hereafter be referred to as the "Class".

54.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

55.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

56.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

57.     *Numerosity:* The Class is composed of hundreds or thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

58.     *Commonality and Predominance:* Common questions of law and fact affect the Class.  These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

    a.  Whether Plaintiff is an "agent" as that term is defined by the Cares Act and relevant regulations;

    b.  Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

    c.  Whether Defendants failed to pay Agent Fees they were required to pay;

    d.  Whether Class Members are entitled to damages; and if so, in what amount;

    e.  Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

    f.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

g.  Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

59.     *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. See Fed. R. Civ. P. 23(b)(1)(A).

60.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiff and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

61.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

62.     Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan

application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## V. CAUSES OF ACTION

### COUNT I

### DECLARATORY RELIEF

### AGAINST ALL DEFENDANTS

63.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

64.     Plaintiff assisted its clients with the PPP Loan application process, allowed Defendants to secure customers for PPP lending, and satisfied all prerequisites for obtaining PPP Agent Fees. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, Defendants kept the Agent Fees for themselves, in direct violation of the SBA Regulations.

65.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Through their conduct of refusing to pay Agent Fees and otherwise, Defendants have denied that they owe the statutorily required Agent Fees to Plaintiff and the Class.

66.     Plaintiff and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set aside money to pay, and to pay the Agent Fees the PPP Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants.

67.     Plaintiff and the Class seek a declaration in accordance with the SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiff

and the Class.

## COUNT II

## UNJUST ENRICHMENT

## AGAINST ALL DEFENDANTS

68.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

69.     Plaintiff and the Class Members are PPP Agents who assisted small businesses in preparing their Application for a PPP loan from Defendants who, in turn, received a federal guarantee of repayment of the funds as well as a generous Lender Fee for each PPP loan from the U.S. Government.

70.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[14]. Despite their efforts as the Applicants' PPP Agents, Defendants have failed to pay Plaintiff and the Class Members the Agent Fees in violation of the SBA PPP Final Rule.

71.     Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP loans.

72.     By holding themselves out as PPP lenders, Defendants' conduct requested Plaintiffs, and the Class Members, to assist Applicants with their PPP Applications and have the Applications submitted to Defendants for approval.

73.     Defendants were well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

74.     Defendants knew or should have known, that a majority of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without

---

[14] *85 FR 20812 (1). (Emphasis Added).*

the assistance of Plaintiff and the Class Members.

75.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members.

76.     Defendants have unjustly benefitted through the illegal retention of the Agent Fee portion of the Lender Fees paid by the Federal Government to the Defendants for the benefit of the Plaintiff and the Class.

77.     If Defendants' practice of retaining the full amount of Lender Fees despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees as Agent Fees, then the purpose and intent of the CARES Act would be upset because PPP Agents would receive no due compensation for assisting small businesses seeking a PPP Loan.

78.     Plaintiff and the Class have no other means of obtaining compensation because the **SBA Regulations prohibit PPP Agents from receiving payment from any source other than the Lender Fees and expressly prohibit collecting any fees from the Applicants**.

79.     Defendants, regardless of any intent of the parties, have an obligation to pay for the services by which they benefited and to compensate Plaintiff and the Class for the **reasonable** value of their services. Such **reasonable** value has been expressly determined in the SBA Regulations.[15]

80.     Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the regulatorily required Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

81.     Defendants should not be allowed to retain the Agents Fee portion of the Lenders Fees from the benefits conferred upon it by Plaintiff's hard work.

_____

[15]  *See 85 FR 20816 (4)(c).* "The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."

82.     Plaintiff and the Class were injured as a direct and proximate cause of Defendants' misconduct. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing their unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

## COUNT III

## CONVERSION

## AGAINST ALL DEFENDANTS

83.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

84.     Under the SBA Regulations, Plaintiff and the Class, as PPP Agents, have a right to, title in, and the legal right of possession of, Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for lending money pursuant to approved Applications.

85.     The SBA Regulations state that "Agent fees *will* be paid out of lender fees" and provide guidelines on the amount of Agent Fees that should be paid to the PPP Agent, depending on the size of the PPP loan secured.

86.     Additionally, the SBA Regulations require that Lenders, not Applicants, pay the Agent Fees. The SBA Regulations unequivocally state that "Agents may not collect fees from the applicant."

87.     Plaintiff and the Class fulfilled the role of the Applicants' PPP Agent by assisting small businesses with their Applications. Due in substantial part to Plaintiff's efforts, Defendants made federally backed PPP loans, entitling Defendants to Lender Fees from the U.S. Government. As such, Plaintiff has a right to receive, and title to, the regulatorily-mandated Agent Fees.

88.     Although Plaintiff is entitled to Agent Fees under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants have no legal claim, authorization,

or approval for this wrongful withholding of the Agent Fees. Therefore, Defendants have appropriated, assumed, and exercised dominion over the Plaintiff's and Class' Agent Fees.

89.    At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiff and the other Class Members.

90.    Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

91.    Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and the Class Members.

92.    By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations.

93.    Defendants committed civil conversion by retaining monies owed to Plaintiff and the Class.

94.    Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiff, as such, seeks recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

**COUNT IV**

**BREACH OF AN IMPLIED CONTRACT**

**AGAINST ALL DEFENDANTS**

95.    Plaintiff and the Class, as PPP Agents, conferred a material benefit upon Defendants by assisting Applicants with their PPP Applications that were submitted to Defendants. Based in large part on Plaintiff's work, Defendants received the Lender Fee from the Federal Government. Approximately 20% of the Lender Fee was to be forwarded to the PPP Agents (i.e., Plaintiffs and the Class) as payment for the PPP Agents' assistance.

96.    In performing work to assist Applicants in preparing Applications for a PPP loan for their small business, Plaintiff and the Class had a reasonable expectation of

compensation. That reasonable expectation stemmed from the SBA Regulations, which explicitly state PPP Agents **will** receive Agent Fees from the lenders. Those Agent Fees were to be paid out of a portion of the Lender Fees.

97.     Despite that reasonable expectation and the plain language of the SBA Regulations, Defendants have failed to pay Plaintiff and the Class the statutorily required Agent Fees.

98.     Instead, Defendants have retained, or stated their entitlement to retain, the Agent Fee portion of the Lender Fees for themselves, or are not complying with the regulatory payout requirements for Agents of the Applicants, and thereby, benefited from the work performed by Plaintiff and the Class.

99.     It would be unjust to allow Defendants to retain the benefit of Plaintiff's and the Class's Agent Fees in light of their reasonable expectation of payment for the services they rendered.

100.     Defendants, regardless of any intent of the parties, have a quasi-contractual obligation to pay for the services by which they benefited and to compensate Plaintiff and the Class for the **reasonable** value of their services.[16]

101.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

## COUNT V

## VIOLATION OF THE "UNFAIR" PRONG OF THE UCL, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

## AGAINST ALL DEFENDANTS

102.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

103.     Plaintiff asserts this cause of action on behalf of themselves and the other

---

[16]  *See 85 FR 20816 (4)(c).* "The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."

Class Members.

104.     The California Unfair Competition Law (hereinafter "UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.

105.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

106.     Defendants have violated the "unfair" prong of the UCL by undermining the Application process and the Agent Fees payment requirements.

107.     Defendants engaged in lending to businesses under the PPP and thus were required to abide by obligations set forth in the SBA Regulations.

108.     Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the understanding, which is consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their services in assisting Applicants in the role of the Applicants' Agent, they would be compensated through the mandated Agent Fees from the Lenders.

109.     Defendants were well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

110.     Defendants knew or should have known, that a majority of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without the assistance of Plaintiff and the Class Members.

111.     Defendants also knew or should have known, that their customers would seek the assistance, and in fact, did seek the assistance of PPP Agents like Plaintiff and the Class Members to assist them in applying for PPP loans with Defendants.

112.     Based on the assistance from the PPP Agents like Plaintiff and the Class Members, the Applicants successfully applied for PPP Loans with the Lenders, which were guaranteed by the SBA.

113.     As a result of these PPP loans, the SBA has paid the Defendants the Lender

Fees. The Lender Fees include the Agent Fees that are due and owing to PPP Agents, including Plaintiff and the Class Members, for their services.

114.     The Defendants obtained the services of and benefits provided by the Plaintiff to the Defendants' customers. As a result, Defendants have earned substantial Agent Fees, but have refused to compensate the Plaintiff and Class the PPP Agent Fees as mandated by the SBA Regulations. Therefore, Defendants' refusal is an unfair and deceptive consumer act or practice.

115.     Through their unfair acts and practices, Defendants have improperly obtained fees from the Federal government at the expense of Plaintiff and the Class.

116.     Defendants' unfair practices occurred during the Application process when Plaintiff rendered services to the Applicants in anticipation of being paid the mandated Agent Fees by the Lenders, only to be denied all or a portion of the Agent Fees owed under the SBA Regulations.

117.     Defendants' unfair practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

118.     These acts and practices were unfair because Defendants withheld monies owed to Plaintiff that were provided for pursuant to the SBA Regulations.

119.     By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of California Business & Professions Code §17200, et seq.

120.     Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest in light of the purpose and nature of the PPP Loans and because the CARES Act expressly authorized the PPP loans for the benefit of the public, including Plaintiff.

121.     Plaintiff and the Class Members are entitled to equitable relief.

122.     As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate

the UCL as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper.

123.    Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT VI

## VIOLATIONS OF THE CARES ACT

## AGAINST ALL DEFENDANTS

124.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

125.    The CARES Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which assists small businesses seeking to maintain payroll and other authorized expenses.

126.    There is an implied cause of action arising under the CARES Act.

127.    The CARES Act, along with the SBA's Regulations, provides for the payment of Agent Fess to authorized representatives who assisted PPP loan applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

128.    In flagrant disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Applicants' authorized representatives (i.e., PPP Agents consisting of the Plaintiff and the Class Members), and instead, kept the fees to enrich themselves.

129.    Plaintiffs and Class Members are PPP Agents under the CARES Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the Federal Government and are to be paid by the Lenders to the Plaintiffs and Class Members as set forth in the CARES Act and the SBA Regulations.

130.    Nevertheless, Defendants refused to pay Plaintiffs and the Class Members the authorized Agent Fees as required by law.

131.   As a direct and proximate result of Defendants' failure and/or refusal to comply with the CARES Act and the SBA Regulations, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

**COUNT VII**

**VIOLATIONS OF THE SBA's 7(a) LOAN PROGRAM, 15 U.S.C. § 636(a)**

**AGAINST ALL DEFENDANTS**

132.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

133.   The PPP was added to the SBA's 7(a) loan program, which is designed to assist small businesses in obtaining financing.

134.   There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the CARES Act.

135.   The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

136.   In flagrant disregard for the law, Defendants have failed and/or refused to pay Agent Fees as required by law to Plaintiffs and the Class Members, and instead, have kept the fees to enrich themselves.

137.   As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class Members have suffered damages in excess of $5 million

**COUNT VIII**

**QUANTUM MERUIT**

**AGAINST ALL DEFENDANTS**

138.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

139.   Plaintiff asserts this cause of action on behalf of itself and other Class Members.

140.   Plaintiff and Class Members performed valuable services for the Defendants,

including but not limited to, serving as the Agents for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and Applicants as required and encouraged by the SBA Regulations.

141.   Plaintiff, in fact, expected that Defendants would pay it the Agent Fees for the costs and services incurred in preparing and submitting the loan applications upon approval, or at least funding of the loan funding of each of its clients' loans under the CARES Act and PPP, as required by the SBA Regulations.  Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.   Plaintiffs and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

142.   Defendants knew or should have known, that a majority of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without the assistance of Plaintiff and the Class Members.

143.   Defendants also knew or should have known, that their customers would seek the assistance, and in fact, did seek the assistance of PPP Agents like Plaintiff and the Class Members to assist them in applying for PPP loans with Defendants.

144.   The Defendants requested the assistance of Plaintiff, or knowingly accepted Plaintiff's and Class Members' service, including but not limited to, working with the Agents during the application process. Plaintiff's and Class Members' assistance in preparing the PPP applications saved Defendants' from doing additional work that was required to gain approval and funding of the subject PPP loans, thereby benefiting them. In most cases, it was only the Plaintiff or Class Member that had access to the necessary data.

145.   Defendants' receipt and retention of the Agent Fees without compensating

Plaintiff and Class Members would be unjust and contrary to law, including the CARES Act, PPP, and SBA Regulations.

146.    The Plaintiff is thus entitled to recover from Defendants the Agent Fees that are due to them under the law, including the CARES Act, PPP, and SBA Regulations.

**COUNT VIII**

**BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES**

**AGAINST ALL DEFENDANTS**

147.    Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

148.    Based on information and belief, Defendants entered into an agreement with the SBA in connection with the loans funded in the PPP.  The 1102 Lender Agreement Defendants each were required to sign and submit specifies repeatedly that it pertains to loans made under the PPP and its implementing regulations, and states that "Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements." The Lender Agreement is "subject to" the "PPP Loan Program Requirements."

149.    The agreements required that Defendants would adhere to all PPP rules and regulations and incorporate these requirements by reference. Defendants and the SBA understood that agents involved in the preparation and submission of PPP loan applications would need to be compensated.

150.    The SBA's PPP regulations specifically require that PPP lenders pay the fees of any "agent" that assists with the PPP loan application process, within the limits.

151.    Defendants understood that Plaintiff and the Class were intended beneficiaries in this agreement. Nevertheless, Defendants have refused to live up to their end of the bargain, and have uniformly refused to pay Agent Fees to Plaintiff and the Class.

152.    By refusing to pay Agent Fees in accordance with SBA regulations, Defendants are violating the terms of their agreement, thereby damaging Plaintiff and the Class. Plaintiff and the Class thus ask this Court to award them damages sufficient to make

them whole, and compensate them for work they did in preparing clients' PPP loan application for loans that were funded, consequential damages, and all other damages available at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

    a.    For an Order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

    b.    For an Order declaring Defendants' actions to be unlawful, including an order in favor of the Plaintiff on all counts;

    c.    For a declaration that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

    d.    For all injunctive and other equitable relief available to Plaintiff and Class Members;

    e.    For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members;

    f.    For an award of punitive damages pursuant to applicable law;

    g.    For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

    h.    For costs related to bringing this action;

    i.    For pre- and post-judgment interest as allowed by law; and,

    j.    Such further relief at law or in equity that this Court deems just and proper.

//
//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

Dated: September 11, 2020                    Respectfully submitted,

*/s/*Michael E. Adler
GRAYLAW GROUP, INC.
Michael E. Adler, Esq. (CA Bar 236115)
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

GERAGOS & GERAGOS, PC
Mark J. Geragos (CA Bar No.: 108325)
Ben J. Meiselas (CA Bar No.: 277412)
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

DHILLON LAW GROUP INC.
Harmeet K. Dhillon (CA Bar No. 207873)
Nitoj P. Singh (CA Bar No. 265005)
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Plaintiff and the Proposed Class*